UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSETTE LANG on behalf of
DOROTHY MORGAN, deceased,

                     Plaintiff,                      REPORT AND
                                                          RECOMMENDATION

         v.

MICHAEL J. ASTRUE,                         05 Civ. 7263 (KMK)(PED)
Commissioner of Social Security,

                    Defendant.
-----------------------------------------------------------X

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

      Plaintiff, Josette Lang, on behalf of claimant Dorothy Morgan, commenced this action pursuant to 42 U.S.C. § 405(g), challenging the decision by the Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for supplemental security income and disability insurance benefits on the grounds that Morgan was not disabled. Pursuant to the Court's order dated November 5, 2008, judgment was granted in favor of Defendant as to the claim for supplemental security income. Presently before this Court is Defendant's Motion for Judgment on the Pleadings as to the claim for disability insurance benefits.[1] As Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion affirmatively urges this Court to vacate and reverse the Commissioner's decision, Plaintiff's filing will be treated as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[2] For the reasons set forth below, I respectfully recommend that Plaintiff's Motion for Judgment on the Pleadings be

---

[1] The motion in question is docketed as a "Motion to Dismissing the Complaint" (*sic*) at D.E. 27.
[2] *See* D.E. 33.

GRANTED, Defendant's Motion for Judgment on the Pleadings by DENIED, and this case be remanded pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings.

I.     **BACKGROUND**

A.     **Personal History**

Claimant Dorothy Morgan was born on July 15, 1926. (R. 49.)[3]  Her medical history is largely undisputed. She was diagnosed with lupus at the age of 28. (R. 35.) At the age of 55, she was further diagnosed with hyperparathyroidism. (R. 227-28.) A consulting physician diagnosed chronic disequilibrium in May of 1982, approximately one year after Morgan claims symptoms began. (R. 218-19.) At about the same time, Morgan began seeing a psychiatrist for depression, though she reported having been treated for depression as early as 1959. (R. 741). The Administrative Law Judge ("ALJ") determined that each of these conditions -- lupus, hyperthyroidism, disequilibrium and a depressive disorder – was a severe impairment under Social Security regulations. (R. 33.)

There is likewise no dispute as to Morgan's work history. Morgan reportedly worked as a seamstress throughout her life, first at Shiller Brothers, a lingerie company. (R. 742.) She worked at the company as a sewing machine operator from 1946 to 1974. (R. 742.) After Shiller Brothers closed, Morgan worked briefly for Stern Maid Lingerie Company as a sewing machine operator in 1975. (R. 743.) Her last full time position appears to have been as a sewing machine operator at Altro Workshops ("Altro"), where

---

[3] Notations preceded by "R" refer to the certified record of proceedings relating to this case submitted by Defendant.

2

she was employed from 1976 – 1981.[4] (R. 743.) She received six (6) months of disability benefits (from March 21 to September 25, 1981) from Altro before being terminated due to an inability to work because of illness. (R. 166). Subsequent to her termination, Morgan filed claims for disability insurance benefits and supplemental security benefits with the Social Security Administration ("SSA").

### B.    Procedural History

Morgan first applied for benefits on October 29, 1981. (R. 63, 78). Those claims were denied as the SSA determined that neither her lupus nor her hyperthyroidism were severe. (R. 68, 73).[5] Morgan sought reconsideration of this determination on March 17, 1982. (R. 74.) Upon reconsideration, the SSA sought further information and reaffirmed its evaluation on July 16, 1982. (R. 75, 77.) Morgan again applied for benefits on January 3, 1983. (R. 88.) That application was denied by the SSA on March 1, 1983. (R. 175). She applied for benefits for a third time in January, 1984. (R. 175, 177). Again, SSA rejected Morgan's request. (R. 202).[6]

These applications were reopened for consideration pursuant to *Dixon v. Shalala*, 792 F. Supp. 942 (S.D.N.Y. 1992) and *Stieberger v. Sullivan*, 801 F. Supp. 1079 (S.D.N.Y. 1992), which require re-evaluation of claims denied due to lack of severity of impairment and lack of disability barring substantial gainful activity, respectively. Upon review of the referenced applications, the SSA again determined that Morgan did not

---

[4] Though the record indicates that Morgan ceased work in 1980 due to disability, there is no contention that she stopped full-time work prior to her claim for disability in March of 1981.
[5] This determination was based solely on a report from Lincoln Hospital dated December 10, 1981; the SSA sought no other evidence as the referenced report purportedly "gave us enough information." (R. 73.)
[6] It appears that Morgan also filed for benefits on September 25, 1985, and February 18, 2007. (R. 181, 202.) Those claims are not at issue in the current action.

qualify for benefits. (R. 119-28, 133-34, 136-38). The SSA specifically noted that it lacked "evidence...needed" to properly evaluate the claims. (R. 120, 134, 138.) On January 4, 2002, Morgan requested a hearing by an ALJ as to the denial of benefits. (R. 139-140).

Morgan died on April 8, 2003, prior to the scheduled hearing. (R. 304.) Plaintiff, Morgan's daughter, sought substitution as claimant. (R. 303). Plaintiff appeared at the hearing before ALJ Scheer on May 1, 2003. (R. 40.) After hearing, the ALJ issued a decision denying the claim for benefits on the grounds that: (1) Morgan's impairments, while severe, did not meet the level of severity necessary to be disabling under SSA regulations; and (2) that, given her residual functional capacity, Morgan could have returned to her previous employment as a sewing machine operator. (R. 28-38).

On October 29, 2003, Plaintiff requested review of the hearing decision by the Office of Hearings and Appeals of the SSA. (R. 25). The Appeals Council denied Plaintiff's request for review on June 13, 2005. (R. 5). Plaintiff then commenced the instant action.

Plaintiff's Complaint sought both SSI and disability insurance benefits. *See* D.E. 1. In response, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12, arguing: (a) that 42 U.S.C. 1383(b)(1)(A)(i) barred Plaintiff from recovering SSI underpayments; and (b) that Plaintiff had failed to join an indispensable party, i.e., her brother, Barry Lang, a beneficiary of Morgan's estate. Magistrate Judge Mark D. Fox issued a report and recommendation concluding that: 1) the SSI claim should be dismissed; and 2) the disability claim should be permitted to proceed because Mr. Lang is not an indispensable party. This Court adopted Judge Fox's recommendations in an

Order dated November 3, 2008. D.E. 24. Now before the Court is Plaintiff's remaining claim, which seeks unpaid disability insurance benefits.

## II.     STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code entitles a Social Security claimant to seek judicial review of the Commissioner's final decision denying such a claimant's application for disability benefits. District courts are empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). It is not "the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court must affirm the Commissioner's decision if it is supported by substantial evidence and if the proper legal standards were observed. *See Beauvoir v. Chater*, 104 F.3d 1432. 1433 (2d Cir. 1997).

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999)(quoting *Mongeur v. Heckler*, 772 F.2d 1033, 1038 (2d Cir. 1983)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are

considered conclusive if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

### III. STATUTORY DISABILITY

The Social Security Act ("SSA") defines "disability" as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). In addition, a person is eligible for disability benefits under the SSA only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Evaluating disability claims involves a five-step analysis:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app.1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

## IV. ALJ'S DETERMINATION

The ALJ applied the five-step procedure prescribed and concluded that Plaintiff was not disabled within the meaning of the SSA from claimed inception date through the date of issuance of the decision. At the first step, the ALJ determined that Morgan "did not engage in substantial gainful activity at any time at issue." (R. 37.) At the second step, the ALJ determined that Morgan "had hyperthyroidism, lupus, a depressive disorder, and disquilibrium, impairments…severe within the meaning of the Regulations." (R. 33.) At the third step, the ALJ found that the impairments suffered did not meet the severity necessary to "meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."[7]

At step four, the ALJ found that Morgan retained the residual functional capacity ("RFC") to perform "light work." (R. 34.) The ALJ further found that Morgan's past work as a seamstress did not require exertion in excess of her RFC. (R. 37.) The ALJ concluded, then, at step four, that "the claimant could return to her past relevant work as a seamstress." (R. 37). As a finding at step four that one can perform her past work conclusively determines that a claimant is not disabled, the ALJ did not continue to the final step in the analysis.

## V. ANALYSIS

### A. Combination of Impairments

As an initial matter, it should be noted that the parties do not dispute the validity of the ALJ's findings with regard to the first and second step of the five-step evaluation

---

[7] Appendix 1 to Subpart P of Part 404 of the Code of Federal Regulations ("the Listings") sets forth determinative listings of severe disabilities.

process. Instead, Plaintiff claims the ALJ erred at step three of the evaluation by failing to consider the "cumulative and interactive effect" of the multiple severe impairments. With regard to combinations of impairments, the applicable regulation reads as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see §§ 416.920 and 416.924).

20 C.F.R. § 416.923. Nothing in the ALJ's decision indicates that he considered the combined effect of the four (4) severe impairments found as required by the regulation.

The only discussion of the interaction between Morgan's impairments to be found in the ALJ's decision occurs in the context of the lupus listing. Under the Listings, disability for systemic lupus erythematosus requires a multi-part finding: (a) symptoms qualifying under section 14.00B1 of the Listings; and either (b) involvement of certain other bodily systems to a degree set forth in other sections of the Listings; or (c) involvement of multiple systems with additional, enumerated symptoms. *See* the Listings, section 14.02. In order to apply the lupus criteria, the ALJ was required to, and did, consider Morgan's depression, a mental disorder under § 12.00 of the Listings which is incorporated by reference into § 14.02(11). (R. 33) However, the lupus listing does not reference disorders of the endocrine system, such as Morgan's hyperthyroidism, so there is no consideration of the interactive effect of that impairment in the ALJ's decision. Similarly, there is no consideration of Morgan's disequilibrium as it relates to her lupus or her other impairments. Thus, the ALJ's limited consideration of Morgan's

depressive disorder in connection with the lupus listing does not constitute compliance with 20 C.F.R. § 416.923, which requires an independent analysis of whether *all* of a claimant's impairments, *in combination*, are severe enough to be disabling.

Such an analysis is required whenever a claimant is found to have multiple impairments. *Delk v. Astrue*, 2009 U.S. Dist. LEXIS 19799 at *13-14 (W.D.N.Y. 2009)(requiring "specific and well-articulated findings as to the effect of the combination of plaintiff's impairments"); *Bigwarfe v. Comm'r of Soc. Sec.*, 2008 U.S. Dist. LEXIS 76360 at *16 (N.D.N.Y. 2008). *See also De Leon v. Secretary of Health*, 734 F.2d 930, 37 (2d Cir. 1984)(reversal required where ALJ failed to analyze four separate impairments "in combination"). Here, the ALJ made no specific findings as to whether and to what extent the effect of the combined impairments caused Morgan to be disabled. Remand is therefore required.

### B.     Other Considerations On Remand

Other considerations should be brought to bear in consideration of Morgan's claims on remand. The ALJ's decision makes no reference to the treating physician rule despite a treating physician's assertion on April 22, 1982, that, after months of treatment, Morgan was "not able to return to work for foreseeable future."[8] (R. 250.) The decision contains no discussion of any evidence which contradicts the treating physician's conclusion.

---

[8] The treating physician rule hold that "a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder." *Havas v. Bowen*, 804 F.2d 783 (2d. Cir. 1986)(internal citations omitted.)

The ALJ does observe that the physician's notation does not "state any specific limitations" as to the precise duration of Morgan's disability. (R. 36.) It should be noted, however, that the SSA did not seek additional information from Morgan's doctor before denying her claim in 1982. *See* R. 77 ("We did not obtain any other reports because this gave us enough information.") SSA also did not request further information from Morgan in connection any of her other benefits claims. Further, the implementation order in *Dixon* requires that Defendant "shall consider the existing evidence of record in the light most favorable to class members." *See Dixon v. New York*, Case No. 83 Civ. 7001, Order Dated December 22, 1993. Findings should be made as to the weight given this treating physician's opinion and the deference shown it in light of the *Dixon* implementation order.

## VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend the Court DENY Defendant's Motion for Judgment on the Pleadings, GRANT Plaintiff's Cross-Motion for Judgment on the Pleadings, and remand the matter, pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings.

## VII. NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. CIv. P. 6(d), or a total of thirteen (13) working days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas

Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated:   June 23, 2009
        White Plains, N.Y.

Respectfully submitted,

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE

11